UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

NOTA MUSIC PUBLISHING, INC.,　　　　　　)
also d/b/a NOTA PUBLISHING, INC.;　　　　)
CARTAGENA ENTERPRISES, INC., also d/b/a　)
CARTAGENA PUBLISHING;　　　　　　　　)
DAVID GRISMAN and CRAIG MILLER,　　　)
individually and collectively, and d/b/a　　　)
DAWG MUSIC, and also d/b/a ACOUSTIC DISC; )　**07-CV-4682 (DAB)**
HMS DISTRIBUTORS, INC., also d/b/a　　　　)　**ECF CASE**
J & N RECORDS and d/b/a J & N PUBLISHING; )
JVN MUSIC, INC., also d/b/a JVN RECORDS;　)
THE MUSIC FORCE LLC;　　　　　　　　　)
also d/b/a FULL FORCE MUSIC　　　　　　　)　**JURY TRIAL DEMANDED**
THE MUSIC FORCE MEDIA GROUP, LLC;　　)
MUSICAL PRODUCTIONS, INC.;　　　　　　)　**CLASS ACTION COMPLAINT**
ON TOP RECORDS CORP., also d/b/a　　　　　)
STILL ON TOP PUBLISHING also d/b/a　　　　)
REAL SMOOTH PUBLISHING;　　　　　　　)
PLATANO RECORDS CORP.;　　　　　　　　)
RICO RECORDS DISTRIBUTING, INC.;　　　　)
individually and on behalf of all others　　　　)
similarly situated,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　-against-　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
XM SATELLITE RADIO INC.,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　　　　　)
_____)

　　　　Plaintiffs Nota Music Publishing, Inc., also doing business as Nota Publishing,

Inc.; Cartagena Enterprises, Inc., also doing business as Cartagena Publishing; Plaintiff

David Grisman and Craig Miller, individually and collectively, and doing business as

Dawg Music, and also doing business as Acoustic Disc; HMS Distributors, Inc., also

doing business as J & N Records and doing business as J & N Publishing; JVN Music,

Inc., also doing business as JVN Records; The Music Force LLC, also doing business as

Full Force Music; The Music Force Media Group, LLC; Musical Productions, Inc.; On Top Records Corp., also doing business as Still On Top Publishing and doing business as Real Smooth Publishing; Platano Records Corp. and RICO Records Distributing, Inc. (hereinafter collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, for their complaint against Defendant, upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, allege the following:

## INTRODUCTION

1.    This action is brought by Plaintiffs on behalf of all persons and entities that have had their copyrighted sound recordings, sound recordings protected under state common law, and copyrighted musical works unlawfully reproduced and distributed by Defendant XM Satellite Radio Inc. ("XM" or "Defendant").

2.    Plaintiffs own or control copyrighted sound recordings and musical works (sometimes collectively referred to as "copyrighted works" herein) and pre-February 15, 1972 sound recordings ("pre-1972 sound recordings") protected under New York state law (all collectively referred to as "protected works" herein). Plaintiffs' source of revenue is derived largely from the sale and distribution of their protected works, including, inter alia, authorized online sale and distribution by means of digital audio transmissions.

3.    Defendant XM is one of two satellite radio providers in the United States. XM currently broadcasts over 170 channels of programming to over approximately 7.5 million subscribers nationwide for an average basic monthly subscription fee of $12.95.

XM is unlawfully reproducing, distributing, and profiting from, Plaintiffs' protected works on a large scale without authority from, or payment to, Plaintiffs.

4.     Defendant's conduct violates the United States Copyright Act [17 U.S.C. §§ 101, et seq.] ("Copyright Act") and constitutes unfair competition and common law copyright infringement under New York state law. Plaintiffs seek an order enjoining Defendant's willful copyright infringement and damages incurred as a result of Defendants unlawful conduct.

## NATURE OF THE ACTION

5.     Under Section 106 of the Copyright Act, Plaintiffs have the exclusive rights to, inter alia, reproduce and distribute their copyrighted works to the public. Plaintiffs also have the exclusive right to perform publicly their copyrighted works by means of a digital audio transmission.

6.     Under Section 114(d) of the Copyright Act, Defendant XM is eligible for a narrow statutory license in Plaintiffs' copyrighted works for one purpose:  to publicly perform Plaintiffs' copyrighted works in a non-interactive radio-like service via satellite radio. Section 114(d) does not give XM the right to distribute or reproduce unlawfully Plaintiffs' copyrighted works.

7.     Contrary to XM's limited statutory license under Section 114(d), Defendant, from on or about April 1, 2006 to the present, has made it possible for its subscribers to hear broadcasts over special receivers marketed as "XM + MP3" players (i.e., the inno, Helix, and neXus, sometimes collectively referred to as "XM's devices" herein). Defendant's XM + MP3 players allow subscribers to record and retain perfect

3

digital copies of Plaintiffs' protected works and allow subscribers to store those copies for unlimited replay for as long as they remain a XM subscriber.

8.     Defendant's XM + MP3 service goes far beyond the traditional radio broadcast licensed in Section 114(d), and effectively provides a digital download service as well. But, unlike legitimate digital download services, XM has deliberately refused to obtain from Plaintiffs any of the licenses required by law to authorize XM's reproduction and distribution activities.

9.     In a related case before this Court, XM argued that it is free to provide its download service to subscribers without the necessary licenses because it is functioning merely as a "radio broadcaster." See 2007 WL 136186. This Court was not persuaded by XM's argument and denied its motion to dismiss. Id.

10.     XM's XM + MP3 service directly encroaches on legitimate digital download business thereby undermining Plaintiffs' ability to distribute their protected works through lawful legitimate services, such as iTunes and others, that distribute Plaintiffs' protected works under the authority of Plaintiffs and compensate Plaintiffs for such specific use. Because XM subscribers are able to copy and store individual songs with the XM + MP3 service, XM subscribers have little need to seek out and purchase legitimate copies of Plaintiffs' protected works.

11.     XM advertises on its website the XM + MP3 service as a substitution for legitimate digital download services. XM deliberately exploits this substitution effect in order to retain new subscribers to its service and to encourage current subscribers to maintain their subscriptions.

4

12.    On February 19, 2007, XM announced its intent to merge with SIRIUS Satellite Radio ("SIRIUS"), (the other leading provider of satellite radio service in the United States) in a deal with an estimated valued at over $13 billion.  To defend against potential antitrust concerns, XM has emphasized on its website that it competes directly not only with radio stations, but also with digital music download services (e.g., "[s]satellite has strong incentives to keep prices low, particularly in the face of competition from many audio entertainment providers - including . . . music subscription services, iPods, CD players and cell phones."  Thus, XM recognizes and acknowledges that its XM + MP3 service competes with legitimate digital music download services.

13.    In sum, by distributing Plaintiffs' protected works, XM is unlawfully exploiting these works in order to maintain and expand its subscriber base, increase its revenues and better position itself to merge with SIRIUS, to the detriment of copyright holders, legitimate digital music download services and, ultimately, consumers. Defendant's XM + MP3 service encroaches directly on the digital download business, and undermines Plaintiffs' ability to distribute their copyrighted works through lawful, legitimate services and other music providers that distribute Plaintiffs' protected works under authority granted by Plaintiffs.

14.    Through its activities, XM is knowingly and willfully infringing Plaintiffs' exclusive rights to reproduce and distribute their copyrighted works, entitling Plaintiffs to permanent injunctive relief barring XM's continued use of Plaintiffs' copyrighted works in the XM + MP3 service.  Plaintiffs are also entitled to recover statutory damages of up to $150,000 per work infringed or, as well as at Plaintiffs' election, actual damages and

XM's profits derived from operating its illicit service, as well as Plaintiffs' attorneys' fees and costs in bringing this action pursuant to 17 U.S.C. § 505.

## THE PARTIES

### Plaintiffs

15.     Plaintiffs are record companies and music publishers, which own or control, respectively, the copyrighted sound recordings and copyrighted musical works that have been unlawfully distributed and reproduced by Defendant XM.  Plaintiffs are engaged in the business of producing and distributing their protected works in various forms, including, inter alia, digital downloads in exchange for compensation.

16.     Plaintiff Nota Music Publishing, Inc., also doing business as Nota Publishing, Inc., is a Florida corporation with its principal place of business in Miami, Florida.

17.     Plaintiff Cartagena Enterprises, Inc., also doing business as Cartagena Publishing, is a New York corporation with its principal place of business in Union City, New Jersey.

18.     Plaintiff David Grisman and Craig Miller, individually and collectively, and doing business as Dawg Music, and also doing business as Acoustic Disc.  Plaintiff David Grisman resides in Sonoma County, California.  Plaintiff Craig Miller is a resident of Los Angeles County, California.  Plaintiffs Dawg Music and Acoustic Disc are California general partnerships owned and controlled by David Grisman and Craig Miller doing business in Sonoma and Los Angeles Counties.

19.    Plaintiff HMS Distributors, Inc., also doing business as J & N Records and doing business as J & N Publishing, is a New York corporation with its principal place of business in Miami, Florida.

20.    Plaintiff JVN Music, Inc., also doing business as JVN Records, is a Massachusetts corporation with its principal place of business in Miami, Florida.

21.    Plaintiff The Music Force LLC, also doing business as Full Force Music, is a Tennessee limited liability corporation, with its principal place of business in Nashville, Tennessee.

22.    Plaintiff The Music Force Media Group, LLC is a Tennessee limited liability corporation, with a principal place of business in Nashville, Tennessee.

23.    Plaintiff Musical Productions, Inc. is a Florida corporation with its principal place of business in Miami, Florida.

24.    Plaintiff On Top Records Corp., also doing business as Still On Top Publishing and doing business as Real Smooth Publishing, is a Florida corporation with its principal place of business in Miami, Florida.

25.    Plaintiff Platano Records Corp. is a Florida corporation with its principal place of business in Miami, Florida.

26.    Plaintiff RICO Records Distributing, Inc. is a New York corporation with its principal place of business in Union City, New Jersey.

27.    A non-exhaustive list of Plaintiffs' copyrighted sound recordings and musical compositions that XM has reproduced and/or distributed without Plaintiffs' authorization, along with the copyright registration number(s) for each, are attached hereto as Exhibits A and B respectively. Additionally, Exhibit C lists Plaintiffs' pre-1972

sound recordings. These lists identify only a small fraction of the copyrighted sound recordings and musical works that are being infringed by XM.

**Defendant**

28.    Defendant XM is a Delaware corporation with its principal place of business in Washington, D.C.

### JURISDICTION AND VENUE

29.    This Court has subject matter jurisdiction over this action, which arises under the Copyright Act, 17 U.S.C. § 101 et seq., based on 28 U.S.C. §§ 1331 and 1338(a).

30.    This Court also has diversity jurisdiction over the Class (as defined in Paragraph 34 herein) pursuant to §§ 1132(d)(2) and (d)(6) of the Class Action Fairness Act of 2005 because one or more members of the Class are citizens of a State different from the Defendant and the aggregate amount in controversy exceeds five million dollars, exclusive of interest and costs.

31.    This Court has personal jurisdiction over Defendant because Defendant resides and may be found in this Judicial District, and does systematic and continuous business in this Judicial District.

32.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(a), because Defendant resides in this Judicial District and is subject to personal jurisdiction in this Judicial District.

## CLASS ALLEGATIONS

33.    Plaintiffs bring this action on behalf of themselves, and all other similarly situated, pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons and/or entities in the United States who own (i) a sound recording protected under federal copyright law or under state common law and/or unfair competition law or (ii) a copyrighted musical composition or a portion thereof, or is a beneficial owner of a copyrighted musical composition, that was unlawfully reproduced and/or distributed by Defendant during the time period April 1, 2006 to the present ("the Class"). Persons and/or entities excluded from the Class are enumerated in Exhibit D hereto.

34.    The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of the Class are geographically dispersed throughout the United States. While the exact number of Class members is in the sole possession, custody, and control of Defendant, Plaintiffs believe that there are thousands or tens of thousands or more members of the Class.

35.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether Defendant's conduct violates the Copyright Act;

        i.  whether Defendant's reproduction, distribution, and public performance of Plaintiffs' and the Class's copyrighted works constitutes violations of the Copyright Act;

ii. whether Defendant acted willfully with respect to the acts compliance of herein and with respect to the rights of Plaintiffs and the Class; and

iii. whether Plaintiffs and the Class are entitled to damages and/or injunctive relief, as requested herein.

b. whether Defendant's reproduction, distribution, and public performance of Plaintiffs' and the Class's pre-1972 sound recordings constitutes violations of New York state laws;

c. the operative time period of Defendant's willful copyright infringement or violation of state common law or unfair competition laws;

d. whether Defendant's conduct caused injury to the business or property of Plaintiffs and the members of the Class;

e. the appropriate measure of the amount of damages suffered by the Class; and

f. the appropriate nature of class-wide equitable relief.

36.    Plaintiffs' claims are typical of the claims of the other members of the Class it seeks to represent.   Defendant's illegal practices have targeted and affected all members of the Class in a similar manner, i.e., they have had their protected works infringed by the Defendant and Plaintiffs and Class members will continue to suffer until the conduct of the Defendant is ceased.   Plaintiffs and members of the Class they seek to represent have all sustained damages arising out of Defendant's conduct in violation of the U.S. Copyright Act [17 U.S.C. §§ 101, et seq.], and New York state law.

37.    Plaintiffs will fully and adequately protect the interests of all members of the Class.  Plaintiffs have retained counsel experienced in class action and copyright infringement litigation.  Plaintiffs have no interests which are adverse to or in conflict with other members of the Class.

38.    The questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members.

39.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable.  The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

40.    The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical.  The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable.  The damages suffered by the individual Class members may be relatively small; and therefore, the expense and burden of individual litigation make it virtually impossible for them to redress the wrongs done to them.  Plaintiffs anticipate no difficulty in the management of this action as a class action.

## FACTUAL ALLEGATIONS

41.    In or around September, 2001, XM launched its satellite radio service and began offering its service to subscribers in exchange for a monthly fee.  Currently, XM's satellite service broadcasts over 170 channels of programming, including a variety of commercial-free music channels, including:  "Top 20 on 20"; "The Blend"; "The 60s"; "The 90s" "Squizz"; "Deep Tracks"; "America"; "Highway 16"; "Suite 62"; "Soul Street"; "Bluesville"; "Watercolors"; "XM Classics"; "Vox"; "Alegria" and "Aguila."

42.    XM's revenue is derived primarily from its monthly subscription fees paid by subscribers.  XM's subscription base has grown dramatically from approximately 27,000 subscribers in 2001 to an estimated 9 million subscribers by the end of 2007.  XM's revenue has grown at an even faster rate from $91 million in 2003; $244 million in 2004; $558 million in 2005; and $933 million in 2006.

43.    In or around April 2006, Defendant expanded its service to include the XM + MP3 service. Defendant's XM + MP3 allows subscribers, by and through XM's portable inno, Helix, and neXus devices, to record, retain and replay music broadcasted over XM's satellite service from nearly any location in the United States.  XM's devices function as receivers, storage devices, and music players.

44.    Defendant's XM + MP3 service and inno, Helix, and neXus devices each allow XM's subscribers to create their own music libraries containing up to 50 hours of recorded music (or approximately 1,000 songs).  Once XM subscribers have downloaded and saved music, they may sort their recorded music by artist, title, or genre, and can create personalized playlists.

45.    XM maintains complete and continuing end-to-end control over its signals, the content its subscribers receive, what subscribers can do with the content transmitted to them by XM, and whether and how long subscribers can retain copies of the digital music transmitted to them by XM.  XM has admitted that a majority of its satellite radio transmissions are encrypted and can only be received by an XM receiver.  XM also admits that its receivers must be activated by XM and that XM has the ability to deactivate XM receivers (including the XM inno, Helix, and neXus).  Additionally, upon information and belief, the XM devices have the capability of reporting subscriber-specific information back to XM.

46.    XM has the capability of marking particular songs so that they can not be stored or saved on XM devices and retains complete control over the accessibility of recordings on XM devices.  XM has admitted that it possesses the technical ability to mark its transmissions such that they cannot be recorded on the inno.  XM also admits that the software as currently configured allows the recordings of XM transmissions made by an inno owner to remain accessible to the inno owner only so long as he or she remains an XM subscriber.

47.    Indeed, the user guides for all three XM devices make clear to subscribers that "[s]ome content cannot be recorded due to restrictions placed by the content owners."  Thus, even though XM has the power and ability to do so, it has failed to take any steps to prevent the recording of Plaintiffs' copyrighted works.  Instead, XM exercises its control over the service only insomuch as to cut off subscribers' access to their recordings when subscribers cancel XM's service.

48. Defendant XM, without license or authority from Plaintiffs, has reproduced copies of Plaintiffs' protected works, including each of the works listed in Exhibits A, B, and C attached hereto. XM stores copies of Plaintiffs' protected works on computer file servers ("server copies"), which XM retains indefinitely. These server copies are the source from which XM initiates the distribution and further reproduction of Plaintiffs' protected works that result in the storage, librarying, and unlimited replay of permanent unlicensed copies of Plaintiffs' copyrighted works via the XM + MP3 service.

49. Defendant's XM + MP3 service is the functional equivalent of a digital music download service, which delivers to Defendant's subscribers permanent digital copies of Plaintiffs' protected works for unlimited replay as long as Defendant's subscribers continue to pay subscription fees to XM.

50. In XM's first quarter 2006 10-K, XM admits that its business competes directly with digital downloading services: ("we compete most directly with the following providers of radio or other audio services: . . . . Internet Radio and Downloading Devices...")

51. Moreover, in connection with its proposed merger with SIRIUS, XM has further admitted on its website: "[s]atellite radio has strong incentives to keep prices low, particularly in the face of competition from many other audio entertainment providers - including free 'over-the-air' AM, FM, and HD radio, Internet radio, music subscription services, iPods, CD players, and cell phones . . . . "

52. The XM + MP3 service goes well beyond simply broadcasting Plaintiffs' protected works and has the following characteristics of a digital download service.

53. First, in violation of 17 U.S.C. § 106(1), the XM + MP3 service automatically makes short term "buffered" copies of each and every song to which a subscriber listens. The sole purpose of the buffered copies are to allow subscribers to record and save digital copies of Plaintiffs' protected works.

54. Second, XM subscribers may search all of XM's 170 plus channels for particular songs and artists so that they automatically receive an alert when their chosen songs or artists are played on any XM channel. Subscribers can then switch channels and record their selected song. XM has admitted that the inno has a "TuneSelect" feature which allows the inno owner to indicate that he or she would like to be notified when certain artists or songs are playing on other XM channels.

55. Third, without ever having to listen to a broadcast, subscribers can scroll through individual play lists of XM channels and select which songs they would like to record and save songs. Indeed, XM admits that when a subscriber records a block of programming for listening at a later time, the inno will record both the song, title, and artist information associated with each song at the time of the radio transmission by XM. Further, XM admits that a subscriber need not listen to the programming in order to record it on the inno and may listen to it at a subsequent time. This service essentially transforms XM's broadcasts into a service for the delivery of permanent downloaded copies of Plaintiffs' and others copyrighted works.

56. Finally, XM's devices allow subscribers to integrate permanent copies of songs delivered by XM with a subscriber's own digital music files. XM admits that when the inno is attached to a personal computer, digital audio files that have been obtained from other sources can be stored on the inno and that these recordings can be combined

into playlists with recordings the subscriber has made on the inno from XM transmissions.

57.    The foregoing four features, _inter alia_, essentially allows XM to operate as a digital download service.

58.    XM's unlawful distribution and reproduction of Plaintiffs' protected works have harmed and will continue to harm Plaintiffs.    If XM subscribers can obtain permanent digital copies of Plaintiffs' protected works via their satellite radio subscription service, they will have little or no incentive to purchase authorized copies of Plaintiffs' protected works.

## COUNT I

### (Direct Copyright Infringement - Infringement of Plaintiffs' Distribution Right in Violation of 17 U.S.C. § 106(3))

59.    Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

60.    XM has distributed and continues to distribute Plaintiffs' protected works to the public, without authorization and without Plaintiffs' permission or consent, by making available and disseminating to its XM + MP3 subscribers digital phonorecords, or copies, of Plaintiffs' copyrighted works, including but not limited to those copyrighted works listed in Exhibits A and B hereto.

61.    XM's distribution of Plaintiffs' copyrighted works unlawfully infringes both on Plaintiffs' copyrighted musical compositions and copyrighted sound recordings, and their exclusive rights under the Copyright Act in violation of 17 U.S.C. § 106(3).

62.    XM's acts of infringement are willful, intentional and purposeful, in violation of Plaintiffs' rights.

16

63.    With respect to each copyrighted work listed in Exhibits A and B hereto, each infringement of Plaintiffs' rights constitute a separate and distinct act of infringement, each separately actionable under the Copyright Act.

64.    Pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 in statutory damages for each work infringed. Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

65.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

66.    Defendant's conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrighted works and exclusive rights under the Copyright Act.

## COUNT II

### (Unauthorized Digital Phonorecord Deliveries in Violation of 17 U.S.C. § 115)

67.    Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

68.    In violation of 17 U.S.C. § 115, XM has distributed, by digital audio transmission, and continues to distribute to the public, without authorization and without Plaintiffs' permission or consent, sound recordings embodying Plaintiffs' copyrighted works, including but not limited to, those listed in Exhibits A and B hereto.

69.    XM's acts of infringement are willful, intentional and purposeful, in violation of Plaintiffs' rights.

70.    With respect to each copyrighted work listed in Exhibits A and B hereto, each infringement of Plaintiffs' rights constitute a separate and distinct act of infringement, each separately actionable under the Copyright Act.

71.    Pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 in statutory damages for each work infringed. Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

72.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

73.    Defendant's conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrighted works and exclusive rights under the Copyright Act.

## COUNT III

### (Direct Copyright Infringement – Infringement of Plaintiffs' Reproduction Right in Violation of 17 U.S.C. § 106(1))

74.    Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

75.    XM has reproduced and continued to reproduce Plaintiffs' copyrighted works, without authorization and without Plaintiffs' permission or consent, including but

not limited to, those copyrighted works listed in Exhibits A and B hereto. XM's reproduction of Plaintiffs' copyrighted works in "buffered" copies unlawfully infringes upon Plaintiffs' registered copyrights and their exclusive rights under the Copyright act in violation of 17 U.S.C. § 106(1).

76. With respect to each copyrighted work listed in Exhibits A and B hereto, each infringement of Plaintiffs' rights constitute a separate and distinct act of infringement, each separately actionable under the Copyright Act.

77. XM's acts of infringement are willful, intentional and purposeful, in violation of Plaintiffs' rights.

78. Pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 in statutory damages for each work infringed. Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

79. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

80. Defendant's conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrighted works and exclusive rights under the Copyright Act.

## COUNT IV

### (Direct Copyright Infringement – Unauthorized Making of Server Copies in Violation of U.S.C. §§ 106(1), 112)

81.    Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

82.    Upon information and belief, XM has reproduced and continues to reproduce Plaintiffs' copyrighted works, without authorization and without Plaintiffs' permission or consent, by making unauthorized server copies of sound recordings embodying Plaintiffs' copyrighted works, including but not limited to those copyrighted works listed in Exhibits A and B hereto. XM retains these server copies indefinitely to facilitate the operation of the XM +MP3 service.

83.    XM's reproduction of Plaintiffs' copyrighted works in server copies unlawfully infringes upon Plaintiffs' copyrighted musical compositions and copyrighted sound recordings and their exclusive rights under the Copyright Act in violation of 17 U.S.C. § 106(1) and the express limitations of 17 U.S.C. § 112.

84.    With respect to each copyrighted work listed in Exhibits A and B hereto, each infringement of Plaintiffs' rights constitute a separate and distinct act of infringement, each separately actionable under the Copyright Act.

85.    XM's acts of infringement are willful, intentional and purposeful, in violation of Plaintiffs' rights.

86.    Pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 in statutory damages for each work infringed. Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs

shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

87.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

88.    Defendant's conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrighted works and exclusive rights under the Copyright Act.

## COUNT V

### (Inducement of Copyright Infringement)

89.    Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

90.    Defendant's XM + MP3 subscribers are making unauthorized reproductions of sound recordings embodying Plaintiffs' copyrighted works, including but not limited to those copyrighted works listed in Exhibits A and B hereto, and therefore, are infringing Plaintiffs' exclusive right of reproduction under 17 U.S.C. § 106(1).

91.    XM has induced the infringement of Plaintiffs' copyrights by activating and maintaining each XM + MP3 subscription with the object of promoting its use to infringe Plaintiffs' copyrighted works.

92.    Defendant is fully aware that Plaintiffs' works are copyrighted and authorized for download through numerous lawful digital music distribution services. Defendant is equally aware that its XM + MP3 subscribers are using –and intends for its

subscribers to use- the XM + MP3 service's librarying function to create permanent infringing phonorecords or copies of Plaintiffs' copyrighted works obtained directly from XM.

93.    Defendant knowingly encourages its XM +MP3 subscribers to build unauthorized libraries of copyrighted works through its advertising materials.    XM further encourages users to treat the songs they copy from the XM + MP3 service as substitutes for other downloaded recordings.

94.    Defendant's manifest object of fostering infringement is additionally demonstrated by, among other things, Defendant's refusal to take readily available steps to prevent infringement of Plaintiffs' copyrighted works, including by marking each work as "restricted" and not available for unauthorized reproduction.    Defendant has this capability, but refuses to use it to prevent Plaintiffs' copyrighted works from being copied.

95.    With respect to each copyrighted work listed in Exhibits A and B hereto, each infringement of Plaintiffs' rights constitute a separate and distinct act of infringement, each separately actionable under the Copyright Act.

96.    XM's acts of infringement are willful, intentional and purposeful, in violation of Plaintiffs' rights.

97.    XM's conduct constitutes the inducement of the infringement of Plaintiffs' copyrights in violation of Section 106 of the Copyright Act.

98.    Pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 in statutory damages for each work infringed.    Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs

shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

99.  Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

100.  Defendant's conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrighted works and exclusive rights under the Copyright Act.

## COUNT VI

### (Contributory Copyright Infringement)

101.  Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

102.  Defendant's XM + MP3 subscribers are making unauthorized reproductions of sound recordings embodying Plaintiffs' copyrighted works, including but not limited to those copyrighted works listed in Exhibits A and B hereto, and therefore, are infringing Plaintiffs' exclusive right of reproduction under 17 U.S.C. § 106(1).

103.  Through its conduct alleged herein, XM has contributorily infringed Plaintiffs' copyrights by enabling, facilitating, materially contributing to and participating in its subscribers' direct infringement of Plaintiffs' exclusive right to reproduce and control the reproduction of its copyrighted works.

104.  Defendant has actual and constructive knowledge that its subscribers are infringing Plaintiffs' copyrighted works by librarying, storing, mixing, and creating

personal playlists of Plaintiffs' music downloaded from XM for unlimited replay, and Defendant knowingly encourages its subscribers to do the same.    Further, XM has admitted that the inno has a feature that allows its owner to arrange the order in which he or she can listen to the songs that have been recorded from XM satellite radio programming.

105.  Through the conduct alleged herein, Defendant enables, facilitates, materially contributes and participates in the infringement of Plaintiffs' copyrighted works by its XM +MP3 subscribers.

106.  Defendant's refusal to take any readily available steps to prevent the infringement of Plaintiffs' copyrighted works, such as by marking each as "restricted" and thus not available for unauthorized reproduction, further demonstrates XM's manifest object of fostering and profiting from the direct infringement by XM's subscribers of Plaintiffs' copyrighted works.

107.  With respect to each copyrighted work listed in Exhibits A and B hereto, each infringement of Plaintiffs' rights constitute a separate and distinct act of infringement, each separately actionable under the Copyright Act.

108.  XM's acts of infringement are willful, intentional and purposeful, in violation of Plaintiffs' rights.

109.  XM's conduct constitutes contributory infringement of Plaintiffs' copyrights in violation of Section 106 of the Copyright Act.

110.  Pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 in statutory damages for each work infringed.  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs

shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

111.  Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

112.  Defendant's conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrighted works and exclusive rights under the Copyright Act.

## COUNT VII

### (Vicarious Copyright Infringement)

113.  Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

114.  Defendant's XM + MP3 subscribers are making unauthorized reproductions of sound recordings embodying Plaintiffs' copyrighted works, including but not limited to those copyrighted works listed in Exhibits A and B hereto, and therefore are infringing Plaintiffs' exclusive right of reproduction under 17 U.S.C. § 106(1).

115.  At all relevant times, XM had and has both the right and the ability to supervise and/or control its subscribers' infringing conduct, and to prevent its XM + MP3 subscribers from infringing Plaintiffs' copyrighted works.  XM expressly reserves the right to terminate an XM + MP3 subscriber's subscription for failure to comply with XM's terms and conditions.  Significantly, the XM user agreement provides that subscribers may not "reproduce, rebroadcast, or otherwise transmit the programming,

create unauthorized recordings of the programming, charge admission specifically for the purpose of listening to the programming, or distribute play lists of the Services." Yet XM has declined to exercise this right and ability to stop or limit its subscribers' infringing conduct, while profiting from same, and so is liable for vicariously infringing Plaintiffs' copyrights.

116. Upon information and belief, XM may be collecting usage information from its subscribers, and could easily determine what specific songs that its subscribers store permanent copies of for unlimited replay on their devices. XM is therefore technically capable of detecting infringement committed using its XM + MP3 service.

117. Upon information and belief, XM retains the ability to prevent the copying, on a track-by-track basis, of any particular song that XM might choose to protect. The fact that XM has the ability, upon termination of a subscriber's account and for other reasons, to prevent the continued replay of a subscriber's recorded songs suggests that XM is also capable of eliminating a subscriber's access to infringing songs from a subscriber's device at any point, if XM chose to do so.

118. XM has refused to take any steps to exercise its right and ability to stop or limit the widespread infringement of Plaintiffs' copyrighted works by its subscribers, because XM derives substantial financial benefits from its subscribers' direct infringements of Plaintiffs' copyrights.

119. With respect to each copyrighted work listed in Exhibits A and B hereto, each infringement of Plaintiffs' rights constitute a separate and distinct act of infringement, each separately actionable under the Copyright Act.

120. XM's acts of infringement are willful, intentional and purposeful, in violation of Plaintiffs' rights.

121. XM's conduct constitutes vicarious infringement of Plaintiffs' copyrights in violation of Section 106 of the Copyright Act.

122. Pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 in statutory damages for each work infringed. Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from infringement, as will be proven at trial.

123. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

124. Defendant's conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrighted works and exclusive rights under the Copyright Act.

## COUNT VIII

### (Common Law Copyright Infringement of Pre-1972 Sound Recordings)

125. Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

126. Plaintiffs' pre-1972 sound recordings are subject to common-law copyright protection under the law of New York. As the owners of valid common-law copyrights

in the pre-1972 sound recordings, Plaintiffs possess the exclusive rights to manufacture, copy, sell, distribute, and otherwise exploit the recordings.

127.  Plaintiffs have not granted or licensed to Defendant the right to copy or distribute the pre-1972 sound recordings in any manner, including by digital transmission.  Defendant's creation and dissemination of unauthorized copies of Plaintiffs' pre-1972 sound recordings, including but not limited to those recordings listed in Exhibit C hereto, therefore constitutes infringement of Plaintiffs' common-law copyright rights in the pre-1972 sound recordings.

128.  As a direct and proximate result of Defendant's wanton and reckless copyright infringement, Plaintiffs are entitled to compensatory damages in such amounts as will be proven at trial, as well as punitive damages.

129.  Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs' irreparable injury that cannot be fully compensated or measured in money damages.  Plaintiffs have no adequate remedy at law and are entitled to injunctive relief prohibiting Defendant from further violating Plaintiffs' rights in the pre-1972 sound recordings.

## COUNT IX

### (Unfair Competition as to Pre-1972 Sound Recordings)

130.  Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

131.  Plaintiffs possess exclusive ownership interests in and to the pre-1972 sound recordings, and are engaged in the business of selling and distributing the pre-1972

sound recordings, both in the form of tangible CDs, vinyl records and cassettes, and also digitally, over the Internet (in the form of digital downloads) and otherwise.

132. Through the conduct described above, Defendant is violating Plaintiffs' rights in the pre-1972 sound recordings, including but not limited to those recordings listed in Exhibit C hereto, and is guilty of unfair competition under the common law of the state of New York. By distributing and otherwise commercially exploiting unauthorized copies of the pre-1972 sound recordings that compete with Plaintiffs' sales and distribution thereof, and otherwise taking advantage of and undermining Plaintiffs' substantial creative and financial investment in the pre-1972 sound recordings, Defendant is willfully, wantonly and unfairly appropriating Plaintiffs' rights to the pre-1972 sound recordings for its own commercial benefit.

## DEMAND FOR JURY

133. Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiffs respectfully demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant and for the following relief:

1. A declaration that Defendant has willfully infringed Plaintiffs' copyrighted works through its operation of its XM + MP3 service, both directly and secondarily, and in violation of the Copyright Act;

2. A declaration that Defendant has willfully infringed Plaintiffs' pre-1972 sound recordings through its operation of its XM + MP3 service,

both directly and secondarily, and constitutes unfair competition and common law copyright infringement under New York state law;

3. A permanent injunction requiring Defendant and Defendant's agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitation, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiffs' rights protected by the Copyright Act or common law;

4. For statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 multiplied by each copyrighted sound recording and also for each copyrighted musical composition infringed, or in such other amount as may determined at trial, or, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), their actual damages, including Defendant's profits from infringement, as will be proven at trial;

5. For compensatory and punitive damages in such amounts as may be found or established at trial arising from Defendant's willful and wanton violations of New York state law.

6. Awarding Plaintiffs their attorneys' fees and full costs, pursuant to 17 U.S.C. § 505;

7. For prejudgment interest according to law; and

8. For such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        June 1, 2007

Respectfully submitted,

**LOVELL STEWART HALEBIAN LLP**

Christopher Lovell (CL 2595)
Christopher M. McGrath (CM 4983)
500 Fifth Avenue, 58th Floor
New York, New York 10110
Telephone: (212) 608-1900
Facsimile:  (212) 719-4677

Jeffrey L. Graubart (JG 1338)
**LAW OFFICES OF JEFFREY L.
GRAUBART**
350 West Colorado Boulevard, Suite 200
Pasadena, California 91105-1855
Telephone: (626) 304-2800
Facsimile: (626) 304-2807

Steven J. D'Onofrio, Esq. (SD 8794)
5335 Wisconsin Avenue, N.W. Suite 950
Washington, D.C. 20015
Telephone: (202) 686-2872
Facsimile: (202) 686-2875
***Counsel for Plaintiffs and the Proposed
Class***

## EXHIBIT A

### Copyrighted Sound Recordings

| Plaintiff/Copyright Owner | Sound Recording | Artist | Copyright Registration No. |
|---|---|---|---|
| Acoustic Disc | The Flood | Old & In the Gray | SR 330-702 |
| Acoustic Disc | My Friend Dawg | David Grisman Quintet | SR 393-738 |
| HMS Distributors, Inc | Tu Carinito | Puerto Rican Power | SR 178-952 |
| HMS Distributors, Inc | La Bomba | Willie Rosario | SR 269-343 |
| HMS Distributors, Inc. | Another Night | Proyecto Uno | SR 188-443 |
| J & N Records | Nadie Se Muere | La Makina | SR 243-528 |
| J & N Records | Mi Reina | La Makina | SR 223-035 |
| J & N Records | Que Cara Mas Bonita | La Makina | SR 265-383 |
| J & N Records | Llego Tu Marido | Los Toros Band | SR 255-233 |
| J & N Records | Hoja en Blanco | Monchy & Alexandra | SR 257-794 |
| J & N Records | Te Extrano | Alex Bueno | SR 225-910 |
| JVN Music, Inc. | Hoja en blanco | Monchy & Alexandra | SR 252-518 |
| The Music Force Media Group LLC | Perfect Island Nights | Bobby Caldwell | SR 383-109 |
| Musical Productions, Inc. | Porque Te Amo | Nino Segarra | SR 117-576 |
| Musical Productions, Inc. | Siempre Sere | Tito Rojas | SR 123-209 |
| Musical Productions, Inc. | Ven | Pedro Conga | SR 123-205 |
| Musical Productions, Inc. | Porque Este Amor | Tito Rojas | SR 138-388 |
| Musical Productions, Inc. | Por Esa Mujer | Tito Rojas | SR 231-179 |
| Musical Productions, Inc. | El Rey Del Mambo | Jose Pena Suazo y La Banda Gorda | SR 225-833 |
| Musical Productions, Inc. | Cuanto Te Amo | Anthony Cruz | SR 222-049 |
| Musical Productions, Inc. | Dejala | Tito Gomez | SR 169-177 |
| Musical Productions, Inc. | Ganas | Tito Gomez | SR 178-606 |
| Musical Productions, Inc. | Lo Que Te Queda | Tito Rojas | SR 172-393 |
| Musical Productions, Inc. | Candela Pura | Jose Pena Suazo y La Banda Gorda | SR 215-225 |
| Platano Records, Corp. | Eres Mentirosa | Cana Brava | SR 226-260 |
| Platano Records, Corp. | Navidad, Navidad | Raulin Rodriguez | SR 228-273 |
| Platano Records, Corp. | La Tanga | Oro Solido | SR 217-950 |
| Platano Records, Corp. | La Morena | Oro Solido | SR 244-682 |
| Platano Records, Corp. | Oro Mix | Oro Solido | SR 244-682 |

1

| Platano Records, Corp. | Abusadora | Oro Solido | SR 244-682 |
|---|---|---|---|
| Platano Records, Corp. | Herida | Brenda K. Starr | SR 242-062 |
| Platano Records, Corp. | Senor Amante | Brenda K. Starr | SR 259-704 |
| RICO Records Distributing, Inc. | Nuestra Musica | El Gran Combo | SR 215-105 |
| RICO Records Distributing, Inc. | Nuevo Milenio Mismo Sabor | El Gran Combo | SR 313-671 |
| RICO Records Distributing, Inc. | Salsa Classics Revisited | El Gran Combo | SR 346-863 |

## EXHIBIT B

### Copyrighted Musical Compositions

| Plaintiff/Copyright Owner | Musical Composition | Artist | Copyright Registration No. |
|---|---|---|---|
| | | | |
| Cartagena Publishing | No Hay Cama Pa' Tanta Gente | El Gran Combo | PA 690-723 |
| Cartagena Publishing | Asalto Navideno | El Gran Combo | PA 690-727 |
| Cartagena Publishing | El Arbolito | El Gran Combo | PA 690-724 |
| Cartagena Publishing | Sube Nene Sube | El Gran Combo | PA 724-673 |
| Cartagena Publishing | Vas Bien | El Gran Combo | PA 971-767 |
| Cartagena Publishing | Viva Puente | El Gran Combo | PA 1-051-574 |
| Cartagena Publishing | Amigos | El Gran Combo | PA 1-051-575 |
| Cartagena Publishing | Me Libere | El Gran Combo | PA 1-051-573 |
| Cartagena Publishing | Nadie Como Ella | El Gran Combo | PA 1-051-755 |
| Cartagena Publishing | Julia | El Gran Combo | PA 1-090-933 |
| Cartagena Publishing | Vagabundo | El Gran Combo | PA 730-012 |
| Cartagena Publishing | Hojas Blancas | El Gran Combo | PA 730-019 |
| Cartagena Publishing | Por El Pecho No | El Gran Combo | PA 724-671 |
| Dawg Music | Sugar Hill Ramble | David Grisman | PA 88-864 |
| Full Force Music | The Dream | David Sanborn | PA 375-637 |
| David Grisman | Dawgy Mountain Breakdown | David Grisman | PA 171-158 |
| J & N Publishing | Nadie Se Muere | La Makina | PA 866-046 |
| J & N Publishing | Nadie Se Muere | La Makina | PAu 2-187-792 |
| J & N Publishing | Arrepentios Pecadores | Willie Rosario | PA 964-946 |
| J & N Publishing | Mi Reina | La Makina | PA 830-044 |
| J & N Publishing | Quizas Si, Quizas No | Los Toros Band | PA 909-014 |
| J & N Publishing | Nada De Nada | Frank Reyes | PA 1-115-663 |
| J & N Publishing | Quien Eres Tu | Frank Reyes | PA 1-220-290 |
| J & N Publishing | Perdidos | Monchy & Alexandra | PA 1-320-417 |
| The Music Force LLC | Good To Me | Bobby Caldwell | PA-973-618 |
| The Music Force LLC | Once Upon A Time | Bobby Caldwell | PA-642-141 |
| The Music Force LLC | What You Won't Do For Love | Bobby Caldwell | PA-19-018 |

| | | | |
|---|---|---|---|
| Nota Publishing, Inc. | Llorare | Tito Rojas | PA 834-077 |
| Nota Publishing, Inc. | Candela Pura | Jose Pena Suazo y La Banda Gorda | PAu 2-119-519 |
| Nota Publishing, Inc. | Ven Que Tengo Mambo | Jose Pena Suazo y La Banda Gorda | PAu 2-119-520 |
| Nota Publishing, Inc. | Soy Yo | Jose Pena Suazo y La Banda Gorda | PAu 2-119-521 |
| Nota Publishing, Inc. | Las Mujeres Son | Jose Pena Suazo y La Banda Gorda | PAu 2-119-525 |
| Nota Publishing, Inc. | Besame | Jose Pena Suazo y La Banda Gorda | PAu 2-119-523 |
| Nota Publishing, Inc. | Pa Los Que Sufren | Jose Pena Suazo y La Banda Gorda | PAu 2-119-524 |
| Real Smooth Publishing | Esta Cache | Oro Solido | PA 1-022-958 |
| Real Smooth Publishing | La Tanga | Oro Solido | PA 912-753 |
| Real Smooth Publishing | La Morena | Oro Solido | PA 885-307 |
| Real Smooth Publishing | Navidad, Navidad | Raulin Rodriguez | PA 928-984 |

**EXHIBIT C**

**Pre-1972 Sound Recordings**

| Plaintiff/Rights Owner | Sound Recording | Artist |
|---|---|---|
| | | |
| RICO Records Distributing, Inc. | Sube Nene Sube | El Gran Combo |
| RICO Records Distributing, Inc. | Vas Bien | El Gran Combo |

**EXHIBIT D**

*The following persons and entities are excluded from the Class as set forth in paragraph 34 of the Complaint:*

Defendant; the subsidiaries and affiliates of Defendant; any person or entity who is a partner, officer, director, employee, or controlling person of Defendant; any entity in which Defendant has a controlling interest; the legal representatives, heirs, successors and assigns of any excluded party.

Additionally, the following parties are specifically excluded from the Class:

UMG Recordings, Inc., Universal Music & Video Distribution, Corp., Interscope Records, Motown Record Company, L.P., EMI Group PLC, Capitol Records, Inc., Virgin Records America, Inc., Warner Music Group, including, but not limited to Warner Bros. Records Inc., Atlantic Recording Corporation, and Elektra Entrainment Group Inc., SONY BMG Music Entertainment, BMG Music, or any other record company and/or record distribution entities owned, in whole or in part, by any of them (the "Major Record Companies") and Famous Music LLC ("Famous"), and subsidiaries, successors, assigns, of, and/or music publishing companies owned in whole or in part by, the Major Record Companies, including, but not limited to Warner/Chappell Music, Unichappell Music, Inc., WB Music Corp., Warner-Tamerlane Publishing Corp., Sony Music Publishing, BMG Music Publishing, Universal Music Corp., Songs of Universal, Inc., Universal-PolyGram International Publishing, Inc., Rondor Music International Publishing, Inc., EMI Music Publishing, Beechwood Music Corp., Colgems-EMI Music Inc., EMI April Music Inc., EMI Blackwood Music Inc., EMI Gold Horizon Music Corp., EMI Golden Torch Music Corp., EMI Intertrax Music Inc., EMI Sosaha Music Inc., EMI Jemaxal Music Inc., EMI U Catalog Inc., EMI Unart Catalog Inc., EMI Virgin Music, Inc., EMI Virgin Songs, Inc., Jobete Music Co., Inc. Scren Gems-EMI Music Inc., SONY/ATV Tunes LLC, SONY/ATV Tree Publishing, SONY/ATV Cross Keys Publishing, SONY/ATV Discos Music Publishing LLC, SONY/ATV Milene Music, and SONY/ATV Acuff Rose Music.