UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NOTA MUSIC PUBLISHING, INC.,
also d/b/a NOTA PUBLISHING, INC.;
CARTAGENA ENTERPRISES, INC., also d/b/a
CARTAGENA PUBLISHING;
DAVID GRISMAN and CRAIG MILLER,
individually and collectively, and d/b/a
DAWG MUSIC, and also d/b/a ACOUSTIC DISC;
HMS DISTRIBUTORS, INC., also d/b/a
J & N RECORDS and d/b/a J & N PUBLISHING;
JVN MUSIC, INC., also d/b/a JVN RECORDS;
THE MUSIC FORCE LLC;
also d/b/a FULL FORCE MUSIC
THE MUSIC FORCE MEDIA GROUP, LLC;
MUSICAL PRODUCTIONS, INC.;
ON TOP RECORDS CORP., also d/b/a        No. 07 CV 4682 (LAK)
STILL ON TOP PUBLISHING and d/b/a
REAL SMOOTH PUBLISHING;
PLATANO RECORDS CORP.;
RICO RECORDS DISTRIBUTING, INC.;
individually and on behalf of all others similarly
situated,

     Plaintiffs,

 -against-

XM SATELLITE RADIO INC.,

     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**JOINT REPORT UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(f)**

Pursuant to Federal Rule of Civil Procedure 26(f), meetings were held on July 18, 2007 (the "July 18 Conference") and August 9, 2007 (the "August 9 Conference") and were attended by counsel for plaintiffs Nota Music Publishing, Inc., also doing business as Nota Publishing, Inc.; Cartagena Enterprises, Inc., also doing business as Cartagena Publishing; David Grisman and Craig Miller, individually and collectively, and doing business as Dawg Music, and also

doing business as Acoustic Disc; HMS Distributors, Inc., also doing business as J & N Records and doing business as J & N Publishing; JVN Music, Inc., also doing business as JVN Records; The Music Force LLC, also doing business as Full Force Music; The Music Force Media Group, LLC; Musical Productions, Inc.; On Top Records Corp., also doing business as Still On Top Publishing and doing business as Real Smooth Publishing; Platano Records Corp. and RICO Records Distributing, Inc. (hereinafter collectively referred to as "Plaintiffs"), counsel for defendant XM Satellite Radio Inc. ("Defendant") and counsel for plaintiffs in the related cases Atlantic Recording Corp., et al. v. XM Satellite Radio Inc. 06 CV 3733 (DAB) (the "Atlantic Action") and Famous Music LLC, et al. v. XM Satellite Ratio Inc. 07 CV 2385 (DAB) (the "Famous Action").

Plaintiffs in the above captioned matter and Defendant hereby submit their joint report as follows:

## I.  Settlement

The parties have engaged in settlement discussions. These discussions were productive and are continuing in good faith.

## II.  Discovery

A.  Initial Disclosures. The parties exchanged the information required by Federal Rule of Civil Procedure 26(a)(1) on August 7, 2007.

B.  Foreign Jurisdictional Discovery. Plaintiffs anticipate needing third party discovery from entities located in foreign jurisdictions. To the extent that such third party discovery takes longer than anticipated, changes in the discovery schedule may be warranted.

C.  Protective Order. The parties have agreed to work together to draft a proposed order acceptable to both parties.

D. <u>Electronically Stored Information</u>. The parties have agreed to discuss their obligations with respect to discovery involving Electronically Stored Information ("ESI") consistent with the requirements of the Federal Rules of Civil Procedure. The initial phase of these discussions began at the July 18 Conference.

**Plaintiffs' Position:** Plaintiffs' position is consistent with the positions taken by plaintiffs in the related cases. In order to streamline the discovery process, plaintiffs in all three related actions have agreed to coordinate discovery and discovery-related efforts to the fullest extent possible.

To the extent ESI is required to be produced pursuant to Rule 34(a) of the Federal Rules of Civil Procedure it will be produced in TIFF image format with extracted text, unique page identifiers and load files. In addition, metadata fields for author, recipient, date of creation, subject and date last assessed will be provided. ESI will be preserved in native format pending resolution of this litigation.

Plaintiffs' position is that Defendant's production should begin immediately and continue on a rolling basis.

At the July 18 Conference Defendant represented that it is an "e-company" so that virtually all of its documents are stored electronically, as opposed to in "hard copy" files. Defendant's position at this time was that it would not begin to conduct document searches and production until the parties in all three actions have agreed upon a list of search terms to be used to conduct automated searches of Defendant's electronic documents.

Plaintiffs understand that search terms may be useful in supplementing and completing Defendant's production. However, Plaintiffs' position remains that search terms are not a substitute for reasonable searches performed by the appropriate persons with knowledge of the

subject matters implicated. Defendant cannot circumvent its responsibilities under the Federal Rules because it chooses to keep its documents electronically.

At the August 8 Conference Defendant informed Plaintiffs that it had determined there are certain "core" documents that can be collected, reviewed and produced without the use of search terms by having knowledge employees of Defendant identify responsive documents. Defendant proposed to begin producing core documents on a rolling basis and after production of the core documents had been completed, Defendant would work with plaintiffs in all three actions to formulate search terms and conduct a single search of the remaining documents.

First, Defendant has refused to provide any timelines for its production of documents that it has proposed to produce by applying search terms to ESI, which, presumably, would account for the vast majority of the discovery in this case. Second, Defendant's position that it will only conduct a single search for plaintiffs in all three actions is impractical. Plaintiffs' experience in these types of cases is that as discovery moves forward more search terms become apparent necessitating additional searches. Also, before Plaintiffs can take a position on Defendant's proposal regarding core documents, the parties must, at a minimum, define the categories and scope of core documents. Finally, Plaintiffs cannot agree to wait until the rolling production of core documents is complete before beginning a search of the remaining documents for all the reasons mentioned above.

Plaintiffs' are ready to meet and confer with Defendant to discuss these issues further.

**Defendant's Position:**

At the July 18 and August 9 Conferences, Defendant explained to Plaintiffs that XM is, in essence, an "e-company" in which virtually all of its documents are maintained in electronic, not hard copy, form. Defendant also informed Plaintiffs that it has taken substantial steps to

gather ESI from custodians who have been identified as likely to have information relevant to this action. Preliminary estimates of the volume of ESI currently exceeds 45 million pages.

Defendant's counsel has determined that there are certain classes of core documents that can be collected, reviewed and produced by having custodians specifically identify where materials responsive to certain requests are located and then work with counsel to gather those materials. On September 4, 2007, Defendant's counsel proposed that production of these core documents would occur on a rolling basis and would be completed by October 31, 2007. However, a very substantial volume of documents, including e-mail communications, are not maintained in a manner that would lend itself to such collection and review. The most efficient method for collecting and reviewing responsive documents in this universe of materials will be to apply search terms. Defendant has always contemplated that its counsel would obtain input as to appropriate search terms from Defendant's employees. The use of search terms is a perfectly appropriate method for Defendant to discharge its obligations under the Federal Rules of Civil Procedure. *See, e.g., Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (rejecting plaintiff's contention that search terms could not be used to locate and produce accessible hard copy and electronic documents and recognizing that "[d]efined search strategies are even more appropriate in cases involving electronic data, where the number of documents may be exponentially greater.")

Defendant has asked Plaintiffs to participate in the process of selecting and deploying search terms and in developing an ESI protocol so that there is no need to conduct multiple searches of the same data. Plaintiffs have stated that they cannot participate in this process absent review of some XM documents; for that reason, Defendant has suggested that the final decision on search terms be made after production of core documents.

Defendant has reviewed Plaintiffs' proposal as to the technical format of ESI that will be produced and has made a counterproposal to Plaintiffs. Defendant is prepared to meet and confer with Plaintiffs to discuss these issues further.

E.   Non-Waiver Agreement. The parties are discussing an agreement regarding inadvertent production of privileged documents.

F.   Document Preservation: At the July 18 Conference, Defendants' counsel indicated that Defendant has taken appropriate steps to preserve its documents and stated that they understood that all of the plaintiffs were doing the same. Plaintiffs' counsel is considering whether a document preservation agreement is needed in this case.

## III.   SCHEDULING

A.   Pre-Trial Deadlines: The parties have not reached agreement on a pre-trial schedule and thus are proposing different schedules.

**Plaintiffs' Position**

Defendant's refusal to discuss a schedule is contrary to Rule 26 and is an attempt to delay discovery in this case. Developing an ESI protocol is not a prerequisite for meaningful discovery or setting a case schedule.

For the foregoing reasons and those set forth in Section II.D. above, Plaintiffs propose the following schedule for this case, which is the same schedule proposed by the plaintiffs in the Famous Action and is consistent with the schedule proposed by the plaintiffs in the Atlantic Action taking into account the ten week difference in the dates of the Rule 26(f) conferences.

| | |
|---|---|
| Initial Disclosures due | August 7, 2007 |
| Cut-off date for amending pleadings of | October 29, 2007 |
| Non-expert discovery cut-off date of | February 28, 2008 |

| | |
|---|---|
| Expert Reports due | April 4, 2008 |
| Expert Rebuttal Reports due | April 25, 2008 |
| Expert Depositions by | May 16, 2008 |
| Dispositive motions filed by | June 16, 2008 |
| Motions heard by | July 18, 2008 |
| Pre-trial conference date of | September 8, 2008 |
| Trial date of | October 13, 2008 |

Because of Defendant's refusal even to discuss setting a schedule for discovery, Plaintiffs do not oppose designating the magistrate judge assigned to this case to address discovery issues. Nonetheless, Plaintiffs believe that the above proposed schedule is realistic and should be approved.

**Defendant's Position**

Defendant believes that the parties do not yet have sufficient information to propose meaningful and realistic dates for document production and the subsequent phases of discovery (*e.g.*, fact depositions and expert discovery) which will be dependent on the schedule for document production. Defendant's reluctance to set a complete schedule at this time is not an attempt to delay, but rather is based on Defendant's counsel's prior experience with cases in which the overwhelming majority of document production relates to ESI and its investigation of the manner in which a substantial amount of the relevant document custodians maintain their files.

Plaintiffs' proposal to conduct this case on an expedited schedule in which *all* fact discovery – including (a) document production and fact depositions involving three related actions all pending before this Court and involving a total of 44 named plaintiffs and numerous

7

third-parties and (b) the resolution of class action issues raised by the fact that two of the actions have been filed as putative class actions – can be completed by February 28, 2008 is wholly unrealistic.

*First,* as indicated in Section II.D above, ESI will be a major issue in this case. Defendant has already begun the document collection process and at the time of the conferences, Defendant had collected ESI from approximately 35-40 custodians. The estimate of the volume of that data is in the range of 25 million pages. Based on additional interviews it has subsequently conducted, Defendant has identified approximately 25-30 additional custodians whose ESI will be collected; this is likely to increase the volume of ESI data to be searched to more than 45 million pages.

For a number of the likely subjects of document discovery, Defendant will be able to identify certain responsive core documents which are regularly kept in the course of Defendant's business by having the relevant custodians locate them in their electronic files. As set forth above, for other kinds of documents, however, including email communications, this method of document collection is not practical. Thus, as Defendants suggested to Plaintiffs, and as is common in many large ESI cases, once an ESI protocol is agreed to (either consensually among the parties or with the assistance of the Court or a magistrate judge), Defendant proposes that search terms will be applied to identify potentially responsive documents. Given the volume of data, the search term results will likely yield several million documents. Those documents will then have to be reviewed for responsiveness and privilege before documents are actually produced. Until the search terms are applied and the volume of "hits" is determined, it is impossible to estimate how long it will take to review the documents.

Defendant anticipates that significant oversight of the electronic discovery process will be needed throughout this case because of the volume of documents and the complexities that exist in dealing with and producing ESI. Accordingly, as indicated above, we respectfully request that the Court refer this case to a magistrate judge for purposes of resolving discovery-related issues. Defendant also respectfully submits that in the course of supervising discovery and setting dates for the various phases of ESI discovery, the magistrate judge will be in a position to oversee the establishment of a realistic schedule for the remaining phases of discovery.

*Second*, there are several other issues that render the notion of conducting all fact discovery in roughly seven months unfeasible. This case is a class action which involves highly technical subjects, including the operation of XM's satellite radio service and the multiple functionalities of the recording devices at issue. The complaint asserts nine claims for relief. XM has asserted ten affirmative defenses. XM will be seeking extensive document discovery from all twelve named plaintiffs, concerning both class certification issues and the merits of the case. XM's document requests, served August 8, 2007, address a wide variety of issues, including, but not limited to: (a) plaintiffs' ownership of the copyrights, (b) whether and to what extent plaintiffs' ability to commercially exploit their sound recordings and musical works have been impacted by XM, (c) plaintiffs' receipt of royalties from XM, (d) plaintiffs' prior statements concerning recording devices and their legality, (e) plaintiffs' knowledge of the architecture, operation and functionality of XM's satellite radio service and the recording devices at issue in this suit, and (f) plaintiffs' knowledge of and consent to activities they complain of in the complaint. XM will seek the depositions of multiple representatives of each of the twelve plaintiffs as well as representatives of the Recording Industry Association of America and the

National Music Publishers' Association. Plaintiffs are likely to seek to depose a significant number of XM representatives on a number of different subjects. There will also be significant third-party discovery. Plaintiffs have already indicated that they will seek discovery from all of the manufacturers of the recording devices, as well as from Napster, which has partnered with XM to provide inno users with a means to download copies of sound recordings that they hear on XM radio. Defendant is likely to seek third-party discovery on, among other topics, the manner in which other radio stations comply with the provisions of § 112(e) of the Copyright Act.

In addition, there are two other similar cases pending before this Court. While the issue of consolidation for discovery purposes has not yet been ruled on, the parties have been attempting to coordinate their efforts in this regard. The three actions combined have 44 named plaintiffs. This action and the Famous Action were filed as class actions, thereby raising a separate group of issues, such as class discovery and motion practice regarding which, if either, of the actions may proceed as a class action.

   B.   Trial Estimate: The parties estimate that the jury trial will take 10-12 court days.

## IV.   Expert Witnesses

The parties each plan to designate expert witnesses who will testify at trial regarding liability and damages. Plaintiffs' proposed schedule for expert disclosures is set forth above in Section III.A.

Dated: New York, New York
September 14, 2007              Respectfully submitted,

                                LOVELL STEWART HALEBIAN LLP

                                _____
                                Christopher Lovell
                                Christopher M. McGrath
                                500 Fifth Avenue, 58th Floor

New York, New York 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

Jeffrey L. Graubart
**LAW OFFICES OF JEFFREY L. GRAUBART**
350 West Colorado Boulevard, Suite 200
Pasadena, California 91105-1855
Telephone: (626) 304-2800
Facsimile: (626) 304-2807

Steven J. D'Onofrio, Esq.
5335 Wisconsin Avenue, N.W. Suite 950
Washington, D.C. 20015
Telephone: (202) 686-2872
Facsimile: (202) 686-2875
*Counsel for Plaintiffs and the Proposed Class*


Dated: New York, New York
September 14, 2007

**COOLEY GODWARD KRONISH LLP**

*/s/ Celia Goldwag Barenholtz*
Celia Goldwag Barenholtz  (CB 9126)
Stephen A. Wieder
Shannon S. McKinnon
Benjamin Kleine
Jennifer Lerner
1114 Avenue of the Americas
New York, New York 10036-7798
Telephone: (212) 479-6330
Facsimile: (212) 4798-6275

*Counsel for Defendant XM Satellite Radio Inc.*

11